# BALTIMORE CITY COURT.

Filed February 1, 1921.

FRANK JOSEPH GODSOL
VS.
NASH MOTORS COMPANY.

*Joseph W. Bailey* and *Howard Bryant* for plaintiff.

*Edwin G. Baetjer* and *Charles McH. Howard* for defendant.

SOPER, C. J. (Orally)—

Opinion (oral) of SOPER, C. J., on defendant's prayer taking case from jury at close of plaintiff's testimony.

The facts in this case, gentlemen, carry us back to the date of this contract, in August, 1915. At that time France was at war. The plaintiff, who was a naturalized citizen of France, who had lived there for fifteen years and who had large business connections in Paris, and, it seems, throughout that part of the continent, was born in the United States. France wanted supplies and munitions of war, automobiles and trucks and many other things, and the plaintiff, as an active and energetic business man, undertook to secure agencies in this country which would enable him to supply to the French Government what it needed in the prosecution of the war, and in the course of that effort he makes this contract with the Nash Company, or the Jeffrey Company, as it was then called. On their part they are anxious, naturally, to have a share in this large market for their goods abroad. These two parties, the plaintiff and defendant, naturally came together. What the plaintiff has is an introduction into the markets of France and Serbia and Belgium, and that is the thing, as I understand it, that the Nash Company

wants and which it gets. The contract is made, deliveries are made and commissions are paid. All that is admitted. Now, then, two years after this circumstance, the United States finds itself at war and finds that it needs many of the same sort of things that France has already supplied itself with two years before. It comes to the Nash Company, and in the course of the next year or so, buys eleven thousand trucks or thereabouts for the equipment of its armies, for the use of the army in camps in this country, and ultimately, at least for seven thousand five hundred of them, for use abroad. The participation of the United States in this war was scarcely contemplated, or at least it was not a certainty at the time of the original contract, nor was it contemplated that this Government would raise an army of two million men and want ten thousand trucks; that could not have been foreseen. The plaintiff nevertheless claims that this contract which he made in 1915 to bring the markets of France and Belgium and Serbia in touch with the manufacturer in this country, is broad enough to apply to the purchase by this Government two years later of trucks in this country for the use of its army. Of course if the contract is broad enough to cover that circumstance, the plaintiff is entitled to his commission. But I confess that I have come to the conclusion that such a contingency was hardly contemplated by the parties at the time they made the contract, and unless the words are quite explicit upon that point the plaintiff ought not to be allowed to recover on the sales which were made by the Nash Company to the United States.

Now, when you look at the words of the contract, the first impression which I received when I read them was that the general purpose in substance of the contract was stated in the first two paragraphs. After that those words are somewhat amplified and explained and made perhaps more inclusive, but the general purpose of this contract is stated by the draughtsman when he wrote the first two paragraphs, wherein he said that the manufacturer agreed that the dealer should have the sole right to sell motor cars and other products in France, Serbia and Belgium, and that the right should include also the right on the part of the dealer to sell motor cars to the countries named and to the governments of the

countries named for use outside of their own territory.

When you look at the surrounding circumstances in the case, it seems to me that you come all the more firmly to the conclusion that the main object of the contract is stated in those first two paragraphs.

Now, further on, we find some amplification of it. It seems to me that the purpose of the amplification of that contract and the further recital of the meaning of it was largely for the protection of the dealer. It was entirely conceivable that some dispute would arise under this contract, as it often does under other dealers' contracts, from the fact that the manufacturer or principal would endeavor to enjoy the market that the dealer had provided without paying the commissions, and, therefore, both sides were willing explicitly to state that they were going to play in good faith and that the dealer should reap the full benefit of his work and that he should get commissions not only on the property that he himself sold, but on all other sales that were made for that territory or in that territory. And the use of the words that have been so much commented upon in this case, that he was to get commissions on sales in or for France, Serbia or Belgium, the use of those words, it seems to me, must be related to the purpose of protecting the dealer. The first impression that I got as to the meaning of those words, even before the argument of counsel, was that they related largely to the second paragraph in this contract which permits the dealer to get commissions, not only on sales in those countries, but sales to or for the governments of those countries. And so, later on in the contract, when it began to talk about collections, it used the words that the dealer was to have the benefit of collections on sales in or for those territories. It does not seem to me, gentlemen, that there is any very great difficulty in the case. I have already recited my understanding of the circumstances which surrounded the making of the contract. I think that simply was this, that just as in this country we have automobile salesmen who have, for instance, the territory of Maryland, and who are entitled to commission on all sales made to Maryland people or for the State of Maryland, so this plaintiff, Mr. Godsol,

was to have the territory of France, Belgium and Serbia, and he was to be entitled to commissions on all sales arising from the demand that originated in that territory. I think that is the spirit and purpose of the agreement. He was on one side of the Atlantic and the Nash Company was on the other; he was in close touch with France, Belgium and Serbia, and they had their automobiles to sell to those countries, and they said to him: "You act as our agent for these countries, and on all sales which are produced by the demand for our article in those countries you shall get your commission, whether you sell it direct or indirect." And, it seems to me, it is an exceedingly unnatural and strained construction to say that the casual use of these words "in or for," words used for the purpose I have already indicated, should now be so broadened as to include the very extraordinary circumstance that nobody thought of at the time, but which happened two years later, whereby the United States entered the war and bought eleven thousand trucks.

I think it is only fair to add to the comment that has already been made, that the very results which happened in this case throw some light on the intention of the parties. It can scarcely be supposed that the Nash people were tying themselves up, in 1915, so that they could make no contracts with their own Government at any time during the term of this war. It is not fair to assume from words as vague as these that any manufacturer in this country, when the world was at war and when it was possible at least that this Government should go in, should make a contract that would put it out of possibility for him to contract freely with his own Government. He might be willing enough to engage Mr. Godsol to deal with France, Belgium and Serbia, but would he tie himself up before he knew the exigencies of the times so that he could not deal freely and unhampered with the Government of his own country?

Gentlemen of the jury, the prayer which has been presented to the court asks the court to instruct you that the plaintiff has no legally sufficient evidence to entitle him to recover and that your verdict must be for the defendant. This is the sort of prayer which can always be offered by the de-

fendant in a case, even though the case is tried by a jury, and it puts upon the court the responsibility of saying whether the plaintiff in law has made out a case. It is tantamount to saying, admit that everything that the plaintiff has said is true and that what all his witnesses have said is true, nevertheless has he a case in law? It is a legal point and the responsibility is upon me to decide. I do instruct you that there is no evidence in this case legally sufficient to entitle the plaintiff to recover. It is not a question in which there is any disputed testimony; all the facts, indeed, are admitted here; it is just a question of what does this contract mean. And, as I say, that is a legal question with the decision of which the law charges me with the responsibility of making, though if I am wrong I can be corrected in a higher court. When you are called to render a verdict in this case you will say "For the defendant."